UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| T.O., a minor through his Guardian Ad Litem Hannah Morris, Individually and as Personal Representative of the Estate of AMY WAYNE MORRIS, Deceased, and S.O., a minor through his Guardian Ad Litem Hannah Morris, Individually and as Personal Representative of the Estate of AMY WAYNE MORRIS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>COUNTY OF NEVADA, a Governmental Entity; WELLPATH, LLC, a Delaware limited liability Company; SHERIFF SHANNON MOON; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | No. 2:24-cv-01131 WBS AC<br><br><br>MEMORANDUM AND ORDER RE: DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS |

----oo0oo----

Plaintiffs T.O. and S.O. ("plaintiffs") brought this action against the County of Nevada ("County"); Wellpath, LLC ("Wellpath"); County Sheriff Shannon Moon; and Does 1-10 seeking

1

damages for violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 via theories of municipal and supervisory liability.  (See Compl. (Docket No. 1) ¶¶ 1-4, 24-87.)

Wellpath is a Delaware entity which "provides correctional healthcare services at Wayne Brown Correctional Facility in Nevada City, California" via a contract with the County.  (Id. ¶¶ 26-28.)  Wellpath now moves to dismiss all claims brought against it.

I.   Factual and Procedural Background

Plaintiffs allege that the County and Sheriff Moon detained their mother, Amy Wayne Morris, at Wayne Brown Correctional Facility between January 15-16, 2023, after being "charged with a crime."  (Compl. ¶¶ 34-35.)  Plaintiffs claim that defendants and their employees did not ask Ms. Morris about her alcohol use or screen her for alcohol withdrawal.  (Id. ¶¶ 37-39.)  Plaintiffs aver that defendants did not monitor Ms. Morris for symptoms of alcohol withdrawal, which led to her "suffering the symptoms of acute alcohol withdrawal" between January 15-17, 2023.  (Id. ¶¶ 39-41.)

On the morning of January 17, 2023, Ms. Morris went into a seizure induced by alcohol withdrawal and "suffered blunt force trauma injuries to her head."  (Id. ¶ 42.)  Later that morning, defendants' employees encountered Ms. Morris "unresponsive in her cell" and "transported [her] by ambulance to Sierra Memorial Hospital where she was pronounced deceased" at the age of forty.  (Id. ¶¶ 43-44, 47.)  The coroner who examined her linked her death to alcohol withdrawal and blunt force trauma to Ms. Morris' head.  (Id. ¶¶ 45-46.)

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows for the court to dismiss claims in a complaint when those claims fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. Id.

Dismissal is proper where a complaint fails to allege "sufficient facts . . . to support a cognizable legal theory," id., or to state "a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

## III. Discussion

Plaintiffs seek to establish municipal liability for violations of the Fourth and Fourteenth Amendments on the part of Wellpath for failure to train its employees; the existence of an unconstitutional custom, practice, policy; and ratifying the decisions of the police officers and jail employees who caused any constitutional violations under 42 U.S.C. § 1983 via theories

of municipal and supervisory liability.  (Compl. ¶¶ 48-87.) Wellpath now moves to dismiss the second and third claims of the complaint.  (See Mot. to Dismiss (Docket No. 23) at 6, 9, 14.)

Because 42 U.S.C. § 1983 does not provide for vicarious liability, a local government or its contractor "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Id.  Neither party disputes that Monell liability may attach to corporate entities such as Wellpath.  (See Opp'n to Mot. at 4 (Docket No. 24).)

    A.   Unconstitutional Custom or Policy

The parties do not dispute that plaintiffs' second claim against Wellpath may be based on allegations that it exploits an unconstitutional custom, practice, or policy; or that Wellpath may liable for a failure to train its employees. However, to establish Monell liability based upon an unconstitutional custom or policy, plaintiffs must show "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'"  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality opinion) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)).

At the motion to dismiss stage, plaintiffs must do more

4

than simply allege that a Monell defendant "maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs" alleged elsewhere in the complaint. AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012).  Rather, the complaint must allege "additional facts regarding the specific nature of that alleged policy, custom[,] or practice." Id.

It is unclear from the complaint exactly what practice or practices plaintiffs rely upon to establish an unconstitutional custom, practice, or policy causally related to the conduct which this case concerns.  See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (holding that a Monell claim lies where "the municipal action was taken with the requisite degree of culpability and [plaintiff] must demonstrate a direct causal link between the municipal action and the deprivation of federal rights").

Plaintiffs list, in shotgun fashion, thirteen so-called "custom[s], practice[s] and polic[ies]" upon which plaintiffs' Monell claim is based.  (Compl. ¶¶ 63-65.)  Each of these is couched in broad terms, such as "providing insufficient medical coverage," or "failing to promptly initiate medication treatment for inmates suffering from alcohol withdrawal." (Id.)  If such generalized descriptions were deemed sufficient, a plaintiff would be able to survive a motion to dismiss a Monell claim in just about every case alleging inadequate medical care under § 1983.

Even where the policy or custom is adequately specified in the complaint, plaintiffs also "must ordinarily point to a

pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." Hyun Ju Park v. City & County of Honolulu, 952 F.3d 1136, 1142 (9th Cir. 2020); see, e.g., Perryman v. City of Pittsburg, 545 F. Supp. 3d 796, 800-02 (N.D. Cal. 2021) (considering prior incidents in deciding whether Monell complaint adequately identified pattern of past violations); Hughey v. Drummond, No. 2:14-cv-00037 TLN AC, 2017 WL 590265, at *4-5 (E.D. Cal. Feb. 14, 2017) (same); Bagley v. City of Sunnyvale, No. 16-cv-02250 LHK, 2017 WL 344998, at *14-15 (N.D. Cal. Jan. 24, 2017) (dismissing Monell claim because plaintiff failed to "allege any facts that indicate that the [city's] police force is regularly taking actions involving excessive force or unlawful arrests" and instead "only [pled] actions related to his own arrest and prosecution").

One similar prior incident does not plausibly suggest the existence of "a widespread practice . . . so permanent and well settled as to constitute a custom or usage with the force of law." Praprotnik, 485 U.S. at 127 (quoting Adickes, 388 U.S. at 167-68). "[R]andom acts," Navarro v. Block, 72 F.3d 712, 714 (9th Cir. 1995), or "isolated or sporadic incidents," Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), are insufficient to prove the existence of an unconstitutional custom or practice. Rather, plaintiffs must prove that the custom or practice in question has "sufficient duration, frequency[,] and consistency that [it] has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918.

Regarding the number of prior cases, the Ninth Circuit

has suggested that one or two prior similar incidents, standing alone, do not suffice to prove the existence of an unconstitutional custom or practice.  See Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989) (one incident cannot establish a practice); Meehan v. County of Los Angeles, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents cannot establish a custom).  But the law does not establish a precise number of previous lawsuits which must be alleged to overcome a motion to dismiss.  See Gonzalez v. County of Merced, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017) (O'Neill, J.).

To determine whether this history of previous lawsuits is sufficient to plausibly allege a policy, custom, or practice at the pleading stage, the court considers all of the relevant factors, including (1) the number of prior lawsuits; (2) the allegations in those lawsuits, including the degree of similarity between the facts alleged in the prior lawsuits and the facts alleged in the action under consideration; (3) the timing of the prior lawsuits; (4) the disposition of the prior lawsuits; and (5) the number and identity of defendants in the prior lawsuits, including whether the municipality itself was a defendant and whether any of the defendants in the prior lawsuits were the same as the defendants in the case under consideration.  See Lesher v. City of Anderson, No. 2:21-cv-00386 WBS DMC, 2021 WL 5744691, at *4 (E.D. Cal. Dec. 2, 2021).

Here, plaintiffs identify several lawsuits against Wellpath or a predecessor entity to show a pattern of similar violations of federally protected rights of which it had actual or constructive notice.  (See Compl. ¶¶ 6-18).  The previous

cases in which Wellpath was alleged to have committed § 1983 violations were all relatively recent, having been filed in the last decade.  However, none of the vignettes plaintiffs cite contain an instance of somebody in government custody suffering injury or death due to alcohol withdrawal.  See, e.g., Deloney v. County of Fresno, No. 1:17-cv-01336 LJO EPG, 2018 WL 1693383, at *1-2 (E.D. Cal. Apr. 6, 2018) (dismissing similar claims against unrelated entity); Paris v. Conmed Healthcare Mgmt., Inc., No. 6:14-cv-1620 TC, 2017 WL 7310079, at *1-5, *12-16 (D. Or. Nov. 17, 2017) (denying summary judgment to subsidiary of Wellpath where decedent passed away due to untreated sepsis as opposed to substance-related withdrawal), report and recommendation adopted, 2018 WL 664807, at *1 (D. Or. Jan. 31, 2018); Hanna ex rel. Henderson v. County of Fresno, No. 1:14-cv-00142 LJO SKO, 2014 WL 6685986, at *1-2 (E.D. Cal. Nov. 26, 2014) (granting in part and denying in part motion to dismiss third amended complaint which names no corporate entities such as Wellpath).  Moreover, plaintiffs fail to reference any verdict or judgment against Wellpath or any related entities in their complaint.[1]

        For the foregoing reasons, the court concludes that plaintiffs have failed to state a claim against Wellpath for Monell liability based on unlawful policy, practice, or custom.

---

[1] In argument, plaintiffs reference cases not mentioned in the complaint to attempt to establish an unconstitutional pattern or practice on behalf of Wellpath.  See, e.g., Estate of Miller v. County of Sutter, No. 2:20-cv-00577 KJM DMC, 2020 WL 6392565, at *14 (E.D. Cal. Oct. 30, 2020).  If plaintiffs want to rely on such cases to establish a pattern or practice, those cites are better included in the complaint.

B. Failure to Train

To state a claim for failure to train under Monell, plaintiffs must show that (1) the existing training program is inadequate "in relation to the tasks the particular officers must perform"; (2) the relevant officials were "deliberate[ly] indifferen[t] to the rights of persons with whom the police come into contact"; and (3) the inadequacy of the training "'actually caused' a deprivation of [plaintiffs'] constitutional rights." Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989) (quoting City of Canton v. Harris, 489 U.S. 378, 388, 388-91 (1989)).

The complaint lacks any specific references to Wellpath's training programs for its employees or alleged deficiencies therein. Plaintiffs do not explain how the alleged unconstitutional policies or customs addressed above necessarily also evince a lack of training. They aver that Wellpath exhibited deliberate indifference to Ms. Morris but only by way of conclusory statements. (See Compl. ¶¶ 51-53.)

Plaintiffs have provided no factual allegations as to (1) how Wellpath's employee training is inadequate, (2) how the relevant officials have been deliberately indifferent to the rights of Anderson citizens, or (3) how the inadequacy of the training caused the alleged deprivation of plaintiff's constitutional rights. See Merritt, 875 F.2d at 770. In fact, plaintiffs have provided no factual allegations whatsoever regarding the Wellpath employee training program.

Accordingly, plaintiffs have failed to state a cognizable claim of failure to train under Monell against

Wellpath.

### C. Ratification

"Ratification . . . generally requires more than acquiescence." Sheehan v. City & County of San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014), rev'd in part on other grounds, 575 U.S. 600, 610-17 (2015). The Ninth Circuit has "found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation." Trevino, 99 F.3d at 920. To show ratification, plaintiffs must demonstrate that the municipality's "authorized policymakers approve[d] a subordinate's decision and the basis for it." Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting Praprotnik, 485 U.S. at 127).

Plaintiffs allege that Wellpath ratified unconstitutional conduct. (Compl. ¶¶ 70-71.) However, they have not identified any officers, directors, executives, or managers of Wellpath who approved the employees' actions and the basis for such approval. See Trevino, 99 F.3d at 920. Such conclusory pleading, absent any supporting factual allegations, does not sufficiently state a Monell claim. See Hicks v. County of Stanislaus, No. 1:17-cv-01187 LJO SAB, 2018 WL 347790, at *6 (E.D. Cal. Jan. 10, 2018) (recommending dismissal of ratification claim where complaint contained no factual allegations to support claim that defendant county "approved, ratified, condoned, encourage, sought to cover up, and/or tacitly authorized" conduct of police unit), report and recommendation adopted, No. 1:17-cv-01187 LJO SAB, 2018 WL 646129, at *1 (E.D. Cal. Jan. 31, 2018).

          Plaintiffs have therefore failed to state a cognizable claim of ratification under Monell against Wellpath.

          For all the foregoing reasons, the court will dismiss the second and third claims against Wellpath for municipal liability under 42 U.S.C. § 1983.[2]

          IT IS THEREFORE ORDERED that Wellpath's motion to dismiss plaintiffs' second and third claims against it (Docket No. 23), be, and the same hereby is, GRANTED.  Plaintiffs have twenty days from the date of this Order to file an amended complaint, if they can do so consistent with this Order.

Dated:  September 17, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[2]   In their opposition, plaintiffs suggest that they should be allowed to proceed on the threadbare allegations in the complaint at least until they have had the opportunity to conduct some limited discovery to develop facts to support their Monell claims.  (Opp'n at 8-9.)  The law does not permit plaintiffs to so proceed.