UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

T.O., a minor through his Guardian Ad Litem Hannah Morris, Individually and as Personal Representative of the Estate of AMY WAYNE MORRIS, Deceased, and S.O., a minor through his Guardian Ad Litem Hannah Morris, Individually and as Personal Representative of the Estate of AMY WAYNE MORRIS,

        Plaintiffs,

   v.

COUNTY OF NEVADA, a Governmental Entity; WELLPATH, LLC, a Delaware limited liability company; CALIFORNIA FORENSIC MEDICAL GROUP, a Domestic Corporation; MICHAEL O'BRIEN, individually; NATIVIDAD RICKS, RN; JENNIFER PIXLEY, RN, JOSEPH BRITTON, MD, and DOES 1 through 10, inclusive, and MATHEW J. DUNDON TRUSTEE OF WELLPATH HOLDINGS, INC. LIQUIDATING TRUST,

        Defendants.

No. 2:24-cv-1131 WBS AC

MEMORANDUM AND ORDER RE: DEFENDANTS' MOTIONS TO DISMISS THIRD AMENDED COMPLAINT AND TO STRIKE

1

----oo0oo----

Plaintiffs T.O. and S.O. ("plaintiffs") brought this action against defendants California Forensic Medical Group, Inc. ("CFMG"), Natividad Ricks, RN ("Nurse Ricks"), Jennifer Pixley, RN ("Nurse Pixley"), and Joseph Britton, MD ("Dr. Britton"), (collectively "Medical Defendants"); Wellpath, LLC ("Wellpath"); Matthew J. Dundon, Trustee of Wellpath Holdings, Inc. Liquidating Trust; the County of Nevada; Officer Michael O'Brien ("Officer O'Brien"); and Does 1-10 seeking damages under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments related to and resulting from the injury and death of their mother, Amy Wayne Morris ("Ms. Morris").  (Plaintiffs' Third Amended Compl. ("TAC") (Docket No. 86) at 2—3.)  Plaintiffs' TAC asserts five claims: (1) deliberate indiference; (2) state created danger; (3) interference with familial relations; (4) failure to train, and custom, practice, and policy; and (5) ratification.  (Id. at 22—37).

Medical Defendants and Wellpath now move to dismiss the TAC (Docket Nos. 91, 92.); plaintiffs oppose the motions (Docket Nos. 96, 97.).  Also before the court is Medical Defendants' and Wellpath's joint motion to strike plaintiffs' opposition as untimely, which plaintiffs also oppose.  (Docket Nos. 98, 99.) For the reasons that follow, Medical Defendants' motion to dismiss will be granted in part and denied in part, Wellpath's motion to dismiss will be granted, and the joint motion to strike will be denied.[1]

---

[1]     Having previously summarized the factual and procedural

I.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to dismiss a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "A Rule 12(b)(6) motion tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. Id.

Dismissal is proper where a complaint fails to allege "sufficient facts . . . to support a cognizable legal theory," id., or to state "a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

II.    Medical Defendants' Motion to Dismiss

Medical Defendants move to dismiss with prejudice the first, second, fourth, and fifth causes of action in the TAC. (Docket No. 91 at 2.)[2]

A.    Claim 1: Deliberate Indifference

---

background of this case in its September 2024 order, the court will not do so again here.  (See Docket No. 33.)

[2]    The court notes that plaintiffs' response in opposition to Medical Defendants' motion was not timely filed.  Because the motion was filed on October 17, 2025 (see Docket No. 91), the deadline for filing a response was October 31, 2025.  See E.D. L.R. 230(c).  Yet, plaintiffs waited to file until January 23, 2026.  (See Docket No. 97.)  In their untimely response, plaintiffs decline to offer either an explanation of what caused them to file 84 days late or any reasons why the court should excuse it.  (See id.)

3

Plaintiffs allege that Nurse Ricks, Nurse Pixley, and Dr. Britton are liable under 42 U.S.C. § 1983 and the Fourteenth Amendment because they acted with deliberate indifference to a substantial risk of harm to Ms. Morris's health and safety. (Plaintiffs' TAC (Docket No. 86) at ¶¶ 84–106.)

As a pre-trial detainee, the circumstances of Ms. Morris's confinement are addressed under the due process clause of the Fourteenth Amendment.  Gordon v. County of Orange, 888 F.3d 1118, 1124 (9th Cir. 2018) (citing Castro v. County of Los Angeles, 833 F.3d 1060, 1069-70 (9th Cir. 2016)).

"The touchstone of due process is protection of the individual against arbitrary action of government," Wolff v. McDonnell, 418 U.S. 539, 558 (1974), and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" Lewis, 523 U.S. at 846 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992)).  Official conduct rises to this level only if it "shocks the conscience." Id.  "Where actual deliberation is practical, then an [individual]'s 'deliberate indifference' may suffice to shock the conscience."  Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010).

Section 1983 claims alleging violations of the right to adequate medical care under the Fourteenth Amendment are evaluated under an objective deliberate indifference standard. Gordon, 888 F.3d at 1124-25.  The objective deliberate indifference standard requires allegations that (i) the defendant intentionally facilitated the conditions of the plaintiff's

4

confinement; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.  Id. at 1125.

At issue here is the third prong, which is evaluated based on "the facts and circumstances of each particular case." Castro, 833 F.3d at 1071 (citation modified).  Importantly "[t]he mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment," Gordon, 888 F.3d at 1125, because "negligently inflicted harm is categorically beneath the threshold of constitutional due process."  Kingsley v. Hendrickson, 576 U.S. 389, 396 (2015); see also Farmer v. Brennan, 511 U.S. 825, 835 (1994) (holding that "deliberate indifference entails something more than mere negligence").  Accordingly, "the plaintiffs must [allege] more than negligence but less than subjective intent -- something akin to reckless disregard."  Gordon, 888 F.3d at 1125 (citations omitted).

Here, Medical Defendants argue that "despite later alleging various 'failures' of the Medical Defendants in their assessments and recommended plan of treatment for Ms. Morris," those allegations are directly contradicted by plaintiffs' allegations against Officer O'Brien, who they claim prevented Medical Defendants from properly performing their duties. (Docket No. 91 at 14.)  As they correctly point out, plaintiffs allege that Officer O'Brien's obstructive conduct 'prevented

medical staff from accurately and adequately assessing' Ms. Morris'[s] health."  (Plaintiffs' TAC (Docket No. 86) at ¶ 5.)

Thus, Medical Defendants argue that plaintiffs have failed to allege facts sufficient to support a claim of deliberate indifference because they "cannot . . . expect the Court to find the Medical Defendants were deliberately indifferent to medical needs they were prevented from knowing." (Docket No. 91 at 14.)  But this argument is unavailing for at least two reasons.

First, at the motion to dismiss stage, "[u]nder Federal Rule of Civil Procedure 8(d), a plaintiff may plead inconsistent facts to support two or more statements of a claim, even within the same count."  Gross v. Metro. Life Ins. Co., N.Y., N.Y., No. 12-cv-2478 H JMA, 2013 WL 1628138, at *3 n.1 (S.D. Cal. Apr. 12, 2013) (collecting cases); see also Oxnard Manor LP v. Hallmark Specialty Ins. Co., No. 2:23-cv-01322-SPG-MAR, 2023 WL 8191128, at *2 (C.D. Cal. Sept. 15, 2023) ("Federal Rule of Civil Procedure 8(d) expressly permits the pleading of alternative, or even inconsistent, claims."); Cunningham v. Cornell Univ., 86 F.4th 961, 979 (2d Cir. 2023), rev'd and remanded on other grounds, 604 U.S. 693 (2025) ("[A] plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency. . . . [I] a single count, a plaintiff may plead multiple—sometimes contradictory—theories of liability." (internal citations and quotation marks omitted).).

Second, plaintiffs' deliberate indifference claim does not rely solely upon facts inconsistent with their allegations as

6

to Officer O'Brien.  Rather, the pleadings allege facts independent from Officer O'Brien's conduct that can support an inference that Medical Defendants acted with deliberate indifference.  (See Plaintiffs' TAC (Docket No. 86).)

Plaintiffs allege Nurse Ricks (1) knew about Ms. Morris's excessive daily consumption of alcohol over the preceding year as well as how long it had been since Ms. Morris's last drink, (2) documented in Ms. Morris's chart that she was in "active withdrawal," (3) observed Ms. Morris exhibiting symptoms consistent with worsening withdrawal, and (4) recommended administering medication used to taper patients off of benzodiazepines.  (Id. at ¶¶ 48, 63, 89—91.)  They argue she acted with deliberate indifference because, despite these facts, she declined to conduct a more thorough intake evaluation, placed Ms. Morris in general population rather than having her transported to a hospital for further medical care, and designated her to receive a minimal level of CIWA monitoring that only required evaluation every eight hours.  (Id. at ¶¶ 51, 53, 58, 94—95.)

Plaintiffs also allege that Nurse Pixley acted with deliberate indifference because, while she had access to Ms. Morris's chart listing her as being in "active withdrawal" and documented signs of potentially worsening withdrawal symptoms, she withheld the timely administration of medication to Ms. Morris despite her asking to be woken up to receive the medication; failed to check Ms. Morris's vitals when doing so would have indicated a medical emergency; and failed to conduct a

CIWA evaluation documentation which was not completed until after Ms. Morris had been discovered unresponsive.  (Id. at ¶¶ 66—68, 73—74, 79, 96.)

Plaintiffs further allege that Dr. Britton acted with deliberate indifference because he did not consult Nurse Ricks about the recommended care plan, declined to conduct an independent evaluation of Ms. Morris, and "fail[ed] to order an appropriate housing assignment" or more "frequent CIWA assessments."  (Id. at ¶¶ 61—62.)  "[I]t appears that Dr. [Britton]'s involvement in Ms. Morris's care was limited to rubberstamping the medications chosen by Nurse [Ricks] as part of her initial assessment of Ms. Morris."  (Id. at ¶ 97.)

Taking all of plaintiffs' allegations as true and drawing every reasonable factual inference in plaintiffs' favor, the court finds that plaintiffs have plead facts sufficient to allege objective deliberate indifference.  Accordingly, Medical Defendants' motion to dismiss Claim 1 of the TAC as to Nurse Ricks, Nurse Pixley, and Dr. Britton will be denied.

B.    Claim 2: State-Created Danger

Plaintiffs allege that Nurse Ricks, Nurse Pixley, and Dr. Britton are liable under the Fourteenth Amendment on a theory of state-created danger. (Plaintiffs' TAC (Docket No. 86) at ¶¶ 107—15.)

To allege state-created danger, plaintiffs must allege three elements: (1) "a state actor's affirmative actions created or exposed him to 'an actual, particularized danger [that he] would not otherwise have faced,'" (2) "that the injury he

8

suffered was foreseeable," and (3) "that the state actor was deliberately indifferent to the known danger." Sinclair v. City of Seattle, 61 F.4th 674, 680 (9th Cir. 2023) (citing Hernandez v. City of San Jose, 897 F.3d 1125, 1133-34 (9th Cir. 2018)) (citation modified).

Here, plaintiffs allege that Nurse Ricks, Nurse Pixley, and Dr. Britton were deliberately indifferent to a foreseeable and particularized danger to Ms. Morris that was created through their affirmative acts by (1) "failing to provide [her] with her medication for her withdrawals and seizures," (2) "failing to perform a proper medical screening," (3) "failing to continuously monitor" her, (4) "failing to take her vital signs . . . [and] monitor her Oxygen saturation levels," (5) "failing to administer frequent CIWA assessments commensurate with her risk level of developing delirium tremens and seizures," and (6) "failing to send her to the hospital where a higher level of care was available[.]" (Plaintiffs' TAC (Docket No. 86) at ¶ 113.)

Medical Defendants argue that the TAC fails to allege facts sufficient to support a claim of state-created danger because it "does not allege any affirmative actions", yet defendants concede that the TAC does allege affirmative acts with respect to defendants' "diagnosis, recommended CIWA monitoring levels, and inmate housing location." (See Docket No. 91 at 19—21.) Plaintiffs also plead that Medical Defendants possessed information that, when taken with the alleged failures to act, support an inference that their inaction may have been deliberate. (Plaintiffs' TAC (Docket No. 86) at ¶ 112.)

9

Further, the TAC pleads facts sufficient to allege the foreseeability element of plaintiffs' state-created danger claim by alleging facts about the evaluation, diagnosis, monitoring, and treatment of Ms. Morris that, when taken together, can support an inference of foreseeability with respect to at least some dangers.  (Id. at ¶¶ 112–14.)

Finally, because plaintiffs alleged facts sufficient to support their claim of deliberate indifference under Claim 1, the court finds they have likewise alleged facts sufficient to plead the deliberate indifference element necessary for Claim 2 here. (See id. at ¶¶ 112–15.)  Thus, the court finds that plaintiffs have plead facts sufficient to allege state-created danger against Medical Defendants.

Accordingly, Medical Defendants' motion to dismiss Claim 2 of the TAC as to Nurse Ricks, Nurse Pixley, and Dr. Britton will be denied.

C.    Claims 4 and 5: Monell

Plaintiffs allege 42 U.S.C. § 1983 claims against CFMG based on (1) failure-to-train, (2) custom, practice, and policy, and (3) ratification theories under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).  (Plaintiffs' TAC (Docket No. 86) at ¶¶ 125–57.)  Medical Defendants argue that these claims are time-barred under the applicable statute of limitations.  (Docket No. 91 at 11–12.)

Section 1983 contains no statute of limitations.  See 42 U.S.C. § 1983.  As such, "[a]ctions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of

10

limitations for personal injury actions." Bird v. Dep't of Hum. Servs., 935 F.3d 738, 743 (9th Cir. 2019) (quoting Knox v. Davis, 260 F.3d 1009, 1012-13 (9th Cir. 2001) (citation omitted)).  In California, the statute of limitations for a personal injury action is two years.  Cal. Civ. Pro. Code § 335.1.

While California law governs the length of the statute of limitations, federal law controls when a civil rights claim accrues.  Knox, 260 F.3d at 1013; see also Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000).  "A limitations period begins to run when the claim accrues."  Flynt v. Shimazu, 940 F.3d 457, 462 (9th Cir. 2019) (citing Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 687 (9th Cir. 1993)).  The "discovery rule" provides that "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  Bird, 935 F.3d at 743 (citing Knox, 260 F.3d at 1013); see also Wallace v. Kato, 549 U.S. 384, 388 (2007) ("It is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action[.]").

Here, the parties do not dispute that the injuries precipitating this action occurred on January 15—17, 2023.  (See Docket Nos. 86, 91, 97, 101.)  While the record does not indicate the precise day on which plaintiffs were notified about Ms. Morris's death, based on the representations of counsel during oral arguments, the court assumes that plaintiffs learned of Ms. Morris's death on approximately January 17, 2023.  Thus, the injury underlying plaintiffs' claims would have accrued on that date.

11

It is also undisputed that (1) Wellpath advised plaintiffs that CFMG was an interested party by naming it in its Certificate of Interested Parties, filed on May 24, 2024, and (2) plaintiffs declined to name CFMG as a defendant until filing the TAC on September 19, 2025.  (Docket Nos. 15, 86.)  Medical Defendants correctly observe that "[p]laintiffs allowed 976 days – over two years and eight months – to elapse after Ms. Morris's death before finally naming CFMG[.]"  (Docket No. 91 at 11.)  Given the two-year statute of limitations for personal injury claims in California, then, Medical Defendants argue that "the statute of limitations ran on January 17, 2025," and that plaintiffs' claims against CFMG are now time barred as a result. (Id.)

Plaintiffs argue in response that their claims against CFMG are not time-barred because, under Fed. R. Civ. Pro. 15(c), the relation back doctrine applies.  (Docket No. 97 at 7—10.)  In Krupski v. Costa Crociere S. p. A., the Supreme Court explained that "Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint."  Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 548 (2010) (emphasis in original).  Ordinarily, "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." Id.

And in Kilkenny v. Arco Marine Inc., the Ninth Circuit

12

observed that "Rule 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party."  800 F.2d 853, 857—58 (9th Cir. 1986), cert. denied, 480 U.S. 934 (1987).  Crucially, "Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party[.]"  Id.  The presence of a mistake, however, is key.

Here, then, it is relevant that plaintiffs received notice that CFMG was a potential party on May 24, 2024, because that notice bears on CFMG's understanding of whether plaintiffs made a mistake in failing to name CFMG as a defendant.  (See Docket No. 15.)  Plaintiffs received notice that CFMG was a potential party approximately 16 months -- and multiple amended complaints -- before adding CFMG as a defendant.  (Compare Docket No. 15, with Docket No. 86.)  To the extent that plaintiffs are correct that CFMG had "at least constructive notice," CFMG had reason to believe that plaintiffs were making a tactical decision -- rather than a mistake -- in declining to name CFMG as a defendant.  See Kilkenny, 800 F.2d at 857–58 ("A plaintiff's failure to amend its complaint to add a defendant after being notified of a mistake concerning the identity of a proper party ... may cause the unnamed party to conclude that it was not named because of strategic reasons rather than as a result of plaintiff's mistake."); see also Krupski, 560 U.S. 538, 549 (2010) ("[M]aking a deliberate choice to sue one party instead of another while fully understanding the factual and legal

13

differences between the two parties is the antithesis of making a mistake concerning the proper party's identity.")

Where a party chooses not to name a defendant for reasons other than mistake, the relation back doctrine under Rule 15(c) is unavailable.  See Louisiana-Pacific Corp. v. ASARCO, Inc., 5 F.3d 431, 434 (9th Cir. 1993) (affirming the denial of a Rule 15(c) motion where "[t]here was no mistake of identity, but rather a conscious choice of whom to sue.")

Thus, the court finds that plaintiffs' claims against CFMG are time-barred.  Accordingly, the Medical Defendants' motion to dismiss Claims 4 and Claim 5 against CFMG will be granted.

II.  Wellpath's Motion to Dismiss

Wellpath moves to dismiss plaintiffs' TAC with prejudice on the grounds that plaintiffs are enjoined from suit against Wellpath pursuant to a 2025 order issued by the United States Bankruptcy Court for the Southern District of Texas. (Docket No. 92 at 3.)[3]

Wellpath argues that its liabilities were discharged under the terms of the "First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates" (the "Plan"), which became effective on May 9, 2025.  (Id. at 3—4.)  According to Wellpath, the bankruptcy

---

[3]     While the opposition to this motion was also filed delinquently late, see supra n. 2, the court briefly addresses the merits because Wellpath's motion hinges on the meaning and effect of the bankruptcy court's order and this court cannot merely accept that interpretation based solely on the absense of opposition.

14

court's Confirmation and Stay orders enjoin plaintiffs from pursuing any claims against Wellpath.  (Id. at 5.)

On November 11, 2024, Wellpath, LLC, and its affiliates ("Debtors") voluntarily filed petitions in the United States Bankruptcy Court for the Southern District of Texas under chapter 11 of the United States Bankruptcy Code. (See Docket No. 45.) Wellpath filed a "Notice of Discharge and Injunction" following the bankruptcy court's entry of its "Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis" (the "Confirmation Order") on May 1, 2025, and issuance of a "General Form of Order Regarding Lift Stay Motions" (the "Stay Order") on June 4, 2025.[4] (See Docket No. 67.)  In response, this court ordered plaintiffs to file an amended complaint "join[ing] the Liquidating Trust of Wellpath's chapter 11 restructuring as a nominal defendant." (Docket No. 64 at 3.)

A bankruptcy court's confirmation order effectuating a Chapter 11 bankruptcy reorganization plan "'discharges the debtor from any debt that arose before the date of such confirmation,' except as provided in the plan, the confirmation order, or the code." Harrington v. Purdue Pharma L.P., 603 U.S. 204, 214 (2024) (citing 11 U.S.C. § 1141(d)(1)(A)).  Discharge of

_____

[4] Trigueros v. Adams, 658 F. 3d 983, 987 (9th Cir. 2011) (explaining that courts "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (citation omitted)).

15

liabilities "not only releases or 'void[s] any past or future judgments on the discharged debt; it also 'operates as an injunction ... prohibit[ing] creditors from attempting to collect or recover the debt.'"  Id. at 215 (citing Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 447 (2004)).  That said, "discharge of a debt of the debtor does not affect the liability of any entity on, or the property of any other entity, for such a debt."  11 U.S.C. § 524(e).

Here, Article IX.A of the Plan discharged all "Claims, Interests, and Causes of Action of any nature" that arose against the Debtors prior to the Plan's effective date.  In re Wellpath Holdings, Inc., No. 4:24-bk-90533 (Bankr. S.D. Tex. May 1, 2025) (Docket No. 2596 at 128—29).  And as explained further in the Stay Order, while "[h]olders of personal injury tort and wrongful death Claims against the Debtors are subject to the Trust Distribution Procedures," they "may also seek determinations of the Debtors' liability by the appropriate civil court pursuant to 28 U.S.C. § 157(b)(5) with the Liquidating Trust as a nominal party."  In re Wellpath Holdings, Inc., No. 4:24-bk-90533 (Docket No. 2907 at 2).  Inclusion of the Liquidating Trust as a nominal party is permitted either to "recover against available third-party insurance proceeds" or to "establish or liquidate the amount of their claim for distribution under the Plan from the Liquidating Trust."  Id.

Accordingly, and upon this court's order to do so (see Docket No. 64), plaintiffs added Wellpath Holdings, Inc. Liquidating Trust as a nominal defendant, naming Matthew J.

16

Dundon, as Trustee of the Liquidating Trust, in their Second Amended Complaint ("SAC"). (Plaintiffs' SAC (Docket No. 68).). Yet, the SAC did not remove Wellpath, LLC, as a defendant. (See id.) Likewise, plaintiffs again included Wellpath, LLC, as a defendant in the TAC. (See Plaintiffs' TAC (Docket No. 86).)

In response to the motion, plaintiffs argue that Wellpath remains a proper defendant because plaintiffs "have filed their respective 'OPT out forms'" in compliance with the bankruptcy court's Plan and Stay Orders. (Docket No. 96 at 2.) Thus, plaintiffs conclude that they "are not 'enjoined parties' and no dismissal is required[.]" (Id.) To support their position, plaintiffs attached copies of the opt-out forms they filed with the bankruptcy court. (Docket No. 96-1.) These opt-out forms, however, clearly apply only to non-debtors. (Id. at 9, 29.) As Wellpath is a debtor rather than a non-debtor, then, the opt-out forms do not apply to Wellpath and plaintiffs' filing of the forms does not circumvent the bankruptcy court's injunction.

Plaintiffs likewise mistakenly construe the ability, under the Plan, of "holders of personal injury tort and wrongful death claims" to "seek determinations of Debtor's liability by the appropriate civil" action to mean that debtors may be properly named as parties. (See Docket No. 96 at 2—3.) Plaintiffs claim the bankruptcy court's "Order Denying the Heenan Wilhite (#779594) Lift Stay Motion" ("Wilhite Order"), In re Wellpath Holdings, Inc., No. 4:24-bk-90533 (Bankr. S.D. Tex. May 1, 2025) (Docket No. 2910), supports their view, but the court is

17

not persuaded.  (See Docket No. 96 at 3.)  The Wilhite Order is clear that the injunction prohibiting action agianst Wellpath as a debtor remains unchanged: "The Movant remains enjoined from enforcing recovery from the Debtors, the Debtors' estates, or the Post-Restructuring Debtors with respect to any indemnification obligations for such employees[.]".  In re Wellpath Holdings, Inc., No. 4:24-bk-90533 (Docket No. 2910 at ¶ 5).

Under the terms of the Plan and the Stay Order, however, it is clear that plaintiffs are enjoined from continuing their action against Wellpath, LLC.  As the bankruptcy court explained in a separate order clarifying enforcement of the Plan and its injunctive scope, "[t]he Plan does not permit any party to proceed against the Post-Restructuring Debtors or any Debtor, including but not limited to Wellpath LLC, in any capacity, including as a nominal defendant."  In re Wellpath Holdco, LLC, No. 4:24-bk-90566 (Bankr. S.D. Tex. January 26, 2026) (Docket No. 1279 at 2).  Thus, Wellpath's motion to dismiss the TAC will be granted.

IT IS THEREFORE ORDERED that Medical Defendants' motion to dismiss (Docket No. 91) be, and the same hereby is DENIED as to Claims 1 and 2 of the Third Amended Complaint, and GRANTED as to claims 4 and 5 as against defendant CFMG;

IT IS FURTHER ORDERED that Wellpath's motion to dismiss (Docket No. 92) plaintiffs' Third Amended Complaint as against that defendant be, and the same hereby is, GRANTED.

Accordingly, plaintiffs' Third Amended Complaint is hereby DISMISSED in its entirety as against defendants California

18

Forensic Medical Group, Inc. and Wellpath, LLC.[5]

IT IS SO ORDERED.

Dated:  March 20, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[5]     Defendants' joint motion to strike (Docket No. 98) plaintiffs' untimely responses in opposition (Docket Nos. 96, 97) is DENIED as MOOT.

19